2010 ND 81

**Kenneth JACOB, Jr., Petitioner and Appellant**

v.

**STATE of North Dakota, Respondent and Appellee.**

**No. 20090340.**

Supreme Court of North Dakota.

May 11, 2010.

Richard E. Edinger, Fargo, ND, for petitioner and appellant.

Mark R. Boening (argued), Assistant State's Attorney, and Charles J. Sheeley (on brief), Assistant State's Attorney, Fargo, ND, for respondent and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Kenneth Jacob, Jr., appealed from the district court's judgment denying

his petition for post-conviction relief. Jacob argued he received ineffective assistance of counsel because his trial counsel did not call an expert in trucking to testify. We affirm because Jacob did not establish a reasonable probability that the proposed testimony would lead to a different verdict.

## I.

[¶ 2] We affirmed Jacob's original conviction in *State v. Jacob*, 2006 ND 246, 724 N.W.2d 118. The facts regarding Jacob's conviction are described in that opinion:

Jacob, who has nearly 20 years of trucking experience, testified that he was driving a semi-tractor trailer from western North Dakota to his home in Minnesota when he stopped to see his brother at a Fargo tavern at about 11 p.m. on a Friday night in June. Jacob testified that he parked his truck in a lot across the street from the bar, locked both the driver and passenger doors, urinated "out behind the rear tires," and then walked across the street into the bar. Two witnesses sitting in a van in the bar's parking lot testified they noticed Jacob get out of his truck, go around the front of the truck to the passenger side, bend down, and then go into the bar. The witnesses testified they noticed this activity because they had been watching another man, obviously drunk, stagger about and eventually disappear behind Jacob's truck. The two witnesses testified that when Jacob emerged from the bar, having stayed inside only five minutes, he looked toward the back of his truck and yelled something. One witness characterized it as an "angry yell." Jacob testified that he then got into his truck, shifted and "got locked in reverse by accident," backed up several feet—the trailer rocked—and then drove immediately from the scene. Jacob testified the truck was old and the transmission

was "sloppy." Jacob testified that when he got the truck moving forward he also "felt the trailer rock again a little bit back there ... [and] assume[d] [he] went through a hole or over a small bump in the lot." The witnesses testified that after Jacob pulled away, they saw a man, later identified as Stephen Nelson, lying in the parking lot where Jacob's truck had been parked. An autopsy revealed that Nelson died from multiple blunt force injuries due to a pedestrian-motor vehicle collision and that the man had a blood-alcohol content of 0.42 percent. Another witness testified that he saw Jacob's truck, which had "no lights on at all," speeding away on a road heading east away from Fargo. That witness later notified police about seeing a truck matching the description given by a news bulletin of a truck possibly involved in the killing of a man at a Fargo bar's parking lot. Jacob testified that he had been having electrical problems with his truck and that when his headlights completely failed, he stopped at an abandoned truck stop to spend the night. Jacob testified that he arrived at his place of employment later that Saturday and pressure-washed his truck as company policy required. Four days later, Fargo police arrested Jacob at a construction site in Cass County.

*Id.* at ¶ 2 (alterations in original).

[¶ 3] The jury found Jacob not guilty of murder and negligent homicide, but convicted him of leaving the scene of an accident involving death, in violation of N.D.C.C. § 39–08–04, which states in part:

1. The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop or return with the vehicle as close as possible to the scene of the accident and in every event shall remain at the scene of the accident

until that driver has fulfilled the requirements of section 39–08–06 [Duty to give information and render aid]. Every stop required by this section must be made without obstructing traffic more than is necessary.

2. Any person failing to comply with the requirements of this section under circumstances involving personal injury is guilty of a class A misdemeanor. Any person negligently failing to comply with the requirements of this section under circumstances involving serious personal injury is guilty of a class C felony. *Any person negligently failing to comply with the requirements of this section under circumstances involving death is guilty of a class B felony.*

N.D.C.C. § 39–08–04(1), (2) (emphasis added).

■ [¶ 4] Jacob filed a petition for post-conviction relief, arguing he had received ineffective assistance of counsel. Specifically, Jacob argued his attorney's assistance "fell below an objective standard of reasonableness because he did not call an expert in the trucking industry to testify that [Jacob] did not act negligently in leaving the scene of [an] accident." Along with his petition, Jacob filed two affidavits from experienced truckers. John Lammers stated in his affidavit he was a professional truck driver for twelve to fifteen years and an acquaintance of Jacob's. He asserted Jacob was not acting negligently by leaving the scene. He explained:

Based on the shear [sic] size and weight of the semi trailer that Kenneth [Jacob] was driving, a reasonable, experienced truck driver would not feel a 170 pound human being under their truck. A reasonable truck driver would not be put on notice that the "rocking" was an accident. Instead, as Kenneth [Jacob] testified a reasonable, prudent truck driver would believe they hit a hole or bump in the road.

[¶ 5] Gordon Bolstad stated in his affidavit he was a professional truck driver most of his adult life and an acquaintance of Jacob's. He also asserted Jacob was not negligent in leaving the scene of the accident. He further explained:

Any objective expert from the trucking industry would have testified that Kenneth [Jacob] was not alerted to an accident when he felt his truck rock. The lot was not paved and had many divots in it. Knowing this, a reasonable, prudent truck driver would not have paid any attention to the rocking or movement of his trailer. And would have continued on his way. . . . The jury did not understand that due to the sheer size and power of a semi trailer that a truck driver does not feel anything when it runs over a large object—like a 170 pound man.

[¶ 6] The district court subsequently held an evidentiary hearing. Bolstad testified on Jacob's behalf. He testified that if a semi trailer ran over a 175 pound man, there would be "hardly any reaction at all" due to "the weight of the truck and dual axle." He explained:

Dual axle oscillates where the one set of axles goes over an object and there's a set on the surface and then the second one goes over and then the front one is on the surface. So it's oscillating and giving less action than a single axle to any object.

Bolstad testified a rocking sensation would not put a truck driver on notice of an accident "[b]ecause there wouldn't be very much reaction."

[¶ 7]   Jacob testified on his own behalf. He testified he had a discussion with his court-appointed trial counsel, Steven Mottinger, regarding calling other truck drivers as witnesses.  Jacob asserted Mottinger did not want to call any truckers who were acquainted with Jacob as witnesses because they may be biased.  Jacob further stated Mottinger never asked the district court for money to hire an expert in trucking.

[¶ 8]   Mottinger testified and explained the decision to not call a trucking expert, "We kicked around the idea of possibly calling—getting a truck driver to come in and say that the rocking Mr. Jacob felt would be consistent with hitting a bump, not necessarily running over an individual, but ultimately we decided not to do that." Mottinger explained his theory of the case, "[T]here was no accident and that Mr. Jacob did not realize the individual was back there, felt nothing out of the unusual, and that he drove away."  Mottinger did not think calling an expert in trucking would have made a difference in the result of the trial.  He opined Jacob was an experienced truck driver, and offering the testimony of another experienced truck driver would have been cumulative.  Mottinger also asserted he and Jacob had come to an agreement not to hire an expert witness, and he thought they were "on the same page."

[¶ 9]   The district court denied Jacob's petition.  The district court asserted Jacob had not proven calling a trucking expert would have created a reasonable probability of a different outcome.  The district court explained:

> The bulk of the proposed testimony relates to whether or not Jacob would have felt the impact of driving over a 170 pound man.  The affidavits also analogize it to hitting a deer at highway speeds.  However, at trial Jacob testified that he felt a bump both when reversing his truck and when pulling forward.  Since this fact was not in dispute, testimony regarding the difficulty in feeling a bump would not assist the jury in determining whether Jacob was negligent.

The district court concluded, "Because Jacob has not shown a reasonable probability of a different result, this Court need not reach the issue of whether Mr. Mottinger's performance at trial fell below an objective standard of reasonableness."

## II.

[¶ 10]   This Court has discussed its standard of review with regard to a petition for post-conviction relief alleging ineffective assistance of counsel:

> Proceedings for post-conviction relief are civil in nature and are governed by the North Dakota Rules of Civil Procedure. *Flanagan v. State*, 2006 ND 76, ¶ 9, 712 N.W.2d 602.  A petitioner for post-conviction relief has the burden of establishing grounds for relief. *Id.* at ¶ 10.  A district court's findings of fact in a post-conviction proceeding will not be disturbed on appeal unless clearly erroneous under N.D.R.Civ.P. 52(a). *Flanagan*, at ¶ 9.  Ineffective assistance of counsel is a mixed question of law and fact and is fully reviewable on appeal. *Id.*

*Noorlun v. State*, 2007 ND 118, ¶ 10, 736 N.W.2d 477.

[¶ 11]   A petitioner claiming ineffective assistance of counsel bears a "heavy burden." *Id.* at ¶ 11 (quoting *Flanagan*, 2006 ND 76, ¶ 10, 712 N.W.2d 602).  The petitioner must prove "(1) counsel's representation fell below an objective standard of reasonableness, and (2) the defendant was prejudiced by counsel's deficient performance." *Id.* (quoting *Flanagan*, at ¶ 10).  Trial counsel's performance

is presumed to be reasonable. *Id.* (citing *Flanagan*, at ¶ 10). To meet the second element, the petitioner must "establish a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different." *Id.* (quoting *Flanagan*, at ¶ 10).

## III.

[¶ 12] Jacob recognizes the district court did not address the first element of his ineffective assistance of counsel claim. Nonetheless, Jacob argues his trial counsel's performance fell below an objective standard of reasonableness because he failed to call an expert in the trucking industry to testify. Mottinger's decision to not call an expert witness cannot be analyzed in a vacuum, however. His performance must be viewed in the context of the entire trial. *See Flanagan*, 2006 ND 76, ¶ 17, 712 N.W.2d 602 (testimony must be viewed "within the context of the other evidence and the overall conduct of the trial"). Mottinger testified at the evidentiary hearing, "[T]he major problem we were facing was not the Leaving the Scene of an Accident charge. Obviously there were far more significant charges on the table."

[¶ 13] Nevertheless, we have held "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Heckelsmiller v. State*, 2004 ND 191, ¶ 4, 687 N.W.2d 454 (quoting *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

## IV.

[¶ 14] Jacob argues the proposed testimony would lead to a reasonable probability that the result of the proceeding would have been different. He asserts the jury did not understand the difference between single-axle and dual-axle vehicles, and how

a dual-axle vehicle such as Jacob's semi-tractor trailer would react to driving over a large object. Jacob argues the proposed testimony would instruct the jury that a reasonably prudent truck driver would not have stopped to investigate after feeling a bump similar to the bump he felt. The proposed testimony does not, however, address the context of the other evidence heard by the jury. "We have . . . said the test is not necessarily whether a witness's testimony would have aided the defense, but whether, within the context of the other evidence and the overall conduct of the trial, there was a reasonable probability of a different result in the proceeding if the witness had testified." *Flanagan*, 2006 ND 76, ¶ 17, 712 N.W.2d 602 (citing *Wright v. State*, 2005 ND 217, ¶ 12, 707 N.W.2d 242).

[¶ 15] Witnesses at Jacob's trial testified they saw a man walk behind Jacob's truck. *Jacob*, 2006 ND 246, ¶ 2, 724 N.W.2d 118. Then, Jacob left the bar, walked towards his truck, looked behind the truck, and yelled something. *Id.* One witness described it as an "angry yell." *Id.* Jacob testified he got into his truck, drove in reverse, and felt the trailer rock. *Id.* He then drove forward and felt the trailer rock again. *Id.*

[¶ 16] The witnesses' testimony indicates Jacob knew there was a person near the back of his semi-tractor trailer. He then drove in reverse, felt the trailer rock, drove forward, and felt the trailer rock again. The jury could have concluded Jacob was negligent in not stopping to investigate after feeling a bump when he knew a person was near the back of his truck. The proposed testimony does not address what a reasonably prudent truck driver would do in that situation. The proposed testimony discusses only what a reasonably prudent truck driver would do when he or she feels a bump. It does not ad-

dress Jacob's knowledge that a person was near the back of the truck. Viewing all the evidence presented to the jury and the overall conduct of the trial, Jacob's proposed expert testimony would not lead to a reasonable probability of a different result had an expert testified.

## V.

[¶ 17] We affirm the district court's judgment denying Jacob's petition for post-conviction relief.

[¶ 18] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.